UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Catherine Graham

    v.                                      Civil No. 14-cv-171-LM
                                                Opinion No. 2015 DNH 013

Stephen A. Church, Superintendent,
Rockingham County Department of
Corrections; Unknown Employees of
the Rockingham County Department
of Corrections; Rockingham County
Department of Corrections[1]


**O R D E R**

      While being transported from the Rockingham County House of Corrections ("HOC" or "the jail") to the Plaistow District Court, Catherine Graham had a seizure and suffered injuries.  In her original complaint, Graham sought to recover damages for her injuries from: (1) Steven Church, superintendent of the Rockingham County Department of Corrections ("DOC"); (2) unknown employees of the DOC ("unknown DOC employees"); and (3) the DOC itself.  She asserts two federal constitutional claims through

---

[1] Paragraph 4 of Graham's complaint refers to the third defendant as "County of Rockingham," rather than Rockingham County Department of Corrections," which the court construes as a clerical error.

the vehicle of 42 U.S.C. § 1983[2] and two claims under the common law of New Hampshire.  Before the court are Church's motion for judgment on the pleadings, to which plaintiff does not object, and plaintiff's motion for leave to amend her complaint, to which defendants do object.  For the reasons that follow, Church's motion for judgment on the pleadings is granted, and plaintiff's motion for leave to amend is denied.

I. **Background**

Unless otherwise indicated, the facts in this section are drawn from Graham's original complaint.  On March 14, 2011, Graham's father telephoned the Hampstead police to ask for assistance in transporting his daughter to the hospital because she was having an "alcoholic episode."  At the time, she was under the care of a physician for alcohol dependence and depression.

Instead of taking Graham to the hospital, the officer(s) who responded to her father's call arrested her for violating bail conditions imposed in connection with an earlier alcohol-related incident.  The officer(s) then took Graham to the HOC.

---

[2] Section 1983 provides, in pertinent part, that "[e]very person who, under color of any a statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law."

When Graham was being held at the HOC, medical care at the jail was provided by PrimeCare, Inc. ("PrimeCare"), pursuant to an agreement with the DOC.  See Mot. for Leave, Attach. 2 (doc. no. 12-2).  On March 15, Graham: (1) signed a document informing her that medical care at the jail was provided by PrimeCare, see Def.'s Mem. of Law, Ex. A (doc. no. 15-2); and (2) went through a medical intake conducted by a PrimeCare nurse, and signed an acknowledgment form identifying PrimeCare as the provider of that service, see id., Ex. B (doc. no. 15-3).

From the HOC, Graham contacted her physician to tell him that she had been arrested.  Her physician, in turn, twice contacted the jail to inform its staff that Graham was dependent on alcohol, had a history of alcohol-withdrawal seizures, and needed to take medication he had prescribed to prevent her from having violent seizures.  Graham was never given any anti-seizure medication by anyone at the HOC.

The day after Graham was arrested, Officer Leo Beauchamp of the Hampstead Police Department arrived at the HOC to transport Graham to the Plaistow District Court for arraignment.  When Officer Beauchamp noticed that Graham was shaking and asked her about it, she told him that she was suffering from alcohol withdrawal.  While he was driving Graham to the courthouse, Beauchamp heard her yell "Oh my God" three times and saw her lie

down in her seat.  He then pulled over and called for a rescue squad.  While waiting for medical assistance, Officer Beauchamp and another officer saw Graham have a seizure.  Once Graham's seizure abated, rescue-squad workers took her to Exeter Hospital.

During Graham's seizure, she suffered a broken leg which required surgery.  That surgery involved the installation of a clamp that was screwed into her tibia.  That hardware caused her significant pain, and her surgeon has told her that she may not be pain free, even after her hardware is removed.

This action followed.  In her complaint, filed on March 7, 2014, Graham asserts claims for: (1) deliberate indifference to a serious medical need, in violation of the United States Constitution, against Church and unknown DOC employees (Count I); (2) failure to train and/or supervise, also in violation of the U.S. Constitution, against Church and unknown DOC employees (Count II); (3) breach of a special duty of care, under the common law of New Hampshire, against all four defendants (Count III); and (4) negligence, under New Hampshire common law, against all four defendants (Count IV).  Graham's deliberate-indifference claim asserts, in pertinent part:

> One or more of the defendants was informed by the plaintiff's doctor, Greg R. Thompson, M.D., that her care required her to be provided with anti-seizure medication.  If she was not provided with this

>    medication, Dr. Thompson told one or more staff
>    members at the jail, she would experience seizures.
>
>    Despite receiving this information from Dr.
>    Thompson, the defendants failed to provide the
>    plaintiff with the prescribed and needed medication.
>
>    The defendants' failure to provide the plaintiff
>    her prescribed medication, after having been
>    specifically warned of her needs by her doctor,
>    constituted deliberate indifference and/or was
>    objectively unreasonable conduct toward the
>    plaintiff's medical needs.

Notice of Removal, Attach. A (doc. no. 1-1), Compl. ¶¶ 26-28.

That is, the wrongful act underlying Graham's deliberate-indifference claim is the failure of one or more defendants to provide her with anti-seizure medication despite knowing of Dr. Thompson's warning that she needed it.

## II.  Motion for Judgment on the Pleadings

In his motion for judgment on the pleadings, Church seeks the dismissal of all four claims against him.  Graham does not object.  Accordingly, Church's motion is granted, and all claims against him are dismissed.  Thus, this case now consists of four claims asserted against unknown DOC employees (Counts I-IV) and two claims against the DOC (Counts III and IV).

## III.  Motion for Leave to Amend

According to Graham, her "proposed amendment simply adds PrimeCare, Inc., as an additional party."  Pl.'s Mot. for Leave

5

(doc. no. 12) ¶ 7. For example, in Count I of her proposed amended complaint, she asserts:

> One or more of the defendants was informed by the plaintiff's doctor, Greg R. Thompson, M.D., that her care required her to be provided with [anti]-seizure medication. If she was not provided with this medication, Dr. Thompson told one or more Rockingham County Department of Corrections and/or PrimeCare, Inc., staff members at the jail, she would experience seizures.

Am. Compl. (doc. no. 13) ¶ 27.

In her motion for leave to amend, Graham explains that her motion was prompted by defendants' disclosure, pursuant to DeBenedetto v. CLD Consulting Engineers, Inc., 153 N.H. 793 (2006), that identified PrimeCare as a potentially responsible party. According to defendants, PrimeCare's potential liability arises from the contract between PrimeCare and Rockingham County, under which PrimeCare agreed to: (1) provide medical care at the HOC; and (2) defend and indemnify the DOC, and hold it harmless, with respect to any of PrimeCare's acts or omissions in the course of providing the contracted medical care. See Pl.'s Mot. for Leave, Ex. A (doc. no. 12-1), at 1-2. Defendants object to Graham's motion to amend.

Under the circumstances of this case, Graham needs either defendants' consent, which is not forthcoming, or leave of the court to amend her complaint. See Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so

6

requires." Id. Defendants, however, argue that the court should not grant leave because plaintiff filed her amended complaint after the limitation period on her claims had run, and she is not entitled to relief under the rules governing relation back. The court agrees.

It is undisputed that the limitation period had run on claims arising from Graham's incarceration at the HOC by the time she moved for leave to amend her complaint. Claims asserted in an amended complaint that is filed outside the limitation period are "time-barred as a matter of law unless the amended complaint 'relates back' to the original complaint." Coons v. Indus. Knife Co., 620 F.3d 38, 42 (1st Cir. 2010). "Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint." Id. at 42 n.4 (quoting Pessotti v. Eagle Mfg. Co., 946 F.2d 974, 975 (1st Cir. 1991)).

With regard to the mechanics of relation back, the Federal Rules of Civil Procedure provide, in pertinent part:

> **(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
>> **(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

  **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

  **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). Where, as here, a plaintiff seeks to add a new defendant, she may rely upon either Rule 15(c)(1)(A) or Rule 15(c)(1)(C). See Coons, 620 F.3d at 42; see also 3 James Wm. Moore, Moore's Federal Practice § 15.19[2] (3d ed. 2014).

The plaintiff "bears the burden of showing that the Rule 15(c) relation back doctrine applies." Kelly v. Dowaliby, No. 13-cv-107-LM, 2014 WL 2605478, at *3 (D.N.H. June 10, 2014) (citing Coons, 620 F.3d at 44; Smith v. Chrysler Corp., 45 F. App'x 326, 2002 WL 1899615, at *1 (5th Cir. 2002)); see also Al-Dahir v. F.B.I., 454 F. App'x 238, 242 (5th Cir. 2011). The precise nature of that burden is not entirely clear. Rule 15(c) issues are often litigated when a defendant moves for summary judgment on grounds that a claim asserted in an amended

8

complaint is time-barred. In those situations, courts look to the record to determine whether the plaintiff carried his or her burden of demonstrating that the relation-back doctrine applies. See, e.g., Ham v. Sterling Em'cy Servs. of the Midwest, Inc., 575 F. App'x 610, 617 (6th Cir. 2014); Wilkins v. Montgomery, 751 F.3d 214, 225 (4th Cir. 2014) (rejecting plaintiff's relation-back argument when it had "zero support in the record"). Here, by contrast, Rule 15(c) has arisen in the context of an objection to a proposed amendment, so there is no summary-judgment record to which the court can turn. On the other hand, plaintiff produced two exhibits in support of her motion to amend, and could have produced evidence in support of a reply to defendants' objection, had she filed one. Be that as it may, because the question before the court may be resolved on purely legal grounds, there is no need to further characterize the nature of Graham's burden to show that the relation-back doctrine applies.

    A. Rule 15(c)(1)(A)

Rule 15(c)(1)(A) allows relation back if "the law that provides the applicable statute of limitations allows relation back." Obviously, New Hampshire law provides the statute of limitations for plaintiff's state-law claims. New Hampshire law also provides the statute of limitations for her federal claims.

9

See Conjugal P'ship Acevado-Príncipe v. United States, 768 F.3d 51, 56 (1st Cir. 2014) ("it is well-established that § 1983 claims borrow the forum state's statute of limitations") (citing City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 123 n.5 (2005)).

With regard to the operation of Rule 15(c)(1)(A), Magistrate Judge Neiman's order in Palacio v. City of Springfield, 25 F. Supp. 3d 163 (D. Mass. 2014), is particularly helpful. In that case, as in this one, the plaintiff's claim under § 1983 was governed by a three-year limitation period prescribed by state law. See id. at 168; N.H. Rev. Stat. Ann. ("RSA") § 508:4. Neither the Massachusetts statute of limitations that applied in Palacio, Mass. Gen. Laws ("M.G.L.") ch. 260, § 2A, nor the New Hampshire statute of limitations, says anything about relation back. However, in Palacio, Judge Neiman determined that the plaintiff's untimely claims did relate back, and based his decision on the Massachusetts statute governing amendments, which provides:

> In all civil proceedings, the court may at any time, allow amendments adding a party, discontinuing as to a party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause or for recovery for the injury for which the action was intended to be brought, or enable the defendant to make a legal defense. Any amendment allowed pursuant to this section or pursuant to the

10

> Massachusetts Rules of Civil Procedure shall relate to the original pleading.

M.G.L. ch. 231, § 51 (emphasis added). New Hampshire, too, has a statute governing amendments. That statute provides:

> Amendments in matters of substance may be permitted in any action, in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice; but the rights of third persons shall not be affected thereby.

RSA 514:9 (emphasis added). Unlike the Massachusetts amendment statute, the New Hampshire statute is silent on the matter of relation back. Thus, the New Hampshire statute provides no express basis upon which to base a Rule 15(c)(1)(A) argument.

In addition, while the Massachusetts statute expressly permits amendments to add parties, the New Hampshire statute expressly bars amendments that would affect the rights of third persons. As to the original complaint, PrimeCare is a third person. Regarding PrimeCare's rights, the New Hampshire Supreme Court has explained that "[t]he rationale for the statute of limitations . . . is to insure that defendants receive timely notice of actions against them." Dupuis v. Smith Props., Inc., 114 N.H. 625, 629 (1974); see also Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010) (describing statute of limitations as protecting potential defendant's interest in

11

repose). Based upon Dupuis, PrimeCare had, at the very least, a right to timely notice of Graham's claims.

In Dupuis, it was established as a factual matter that the entity the plaintiff sought to bring into the case by amendment "received actual notice of the action against it prior to the expiration of the statute of limitations." 114 N.H. at 628. Specifically, while the plaintiff intended to sue "Ralph H. Smith Corporation," his writ identified the defendant as a corporation that was related to the intended defendant, "Smith Properties, Inc., d/b/a R.H. Smith Company." Dupuis, 114 N.H. at 627. "When service was made . . . on [a] clerk in her capacity as representative for Smith Properties, Inc., she was also clerk, assistant treasurer and office manager for the intended defendant, Ralph H. Smith Corporation." Id. Later in its opinion, the court went on to note that under New Hampshire law, "[c]orrection of misdescription [of a defendant] is generally permitted by way of amendment but substitution of a new party is not." Id. at 628 (citations omitted).

Here, while Graham argues that "it is simply unimaginable that PrimeCare was not aware of [her] claims promptly upon their filing," Pl.'s Mot for Leave (doc. no. 12) 5, she has not established that PrimeCare ever actually received notice of her claims, and unlike the plaintiff in Dupuis, she does not

identify anything she ever did to notify PrimeCare of her claim. In sum, allowing Graham to amend her complaint to add PrimeCare as a defendant would affect the statutory right of a third person, PrimeCare, to have timely notice of Graham's claim against it.[3]  In short, Rule 15(c)(1)(A) does not entitle Graham to amend her complaint to add PrimeCare as a defendant.

### B. Rule 15(c)(1)(C)

Because Graham cannot establish relation back under Rule 15(c)(1)(A), she is entitled to amend her complaint only if she can satisfy Rule 15(c)(1)(C), which requires her to demonstrate that: (1) her claims against PrimeCare satisfy Rule 15(c)(1)(B) by arising out of the same conduct on which the original complaint is based; (2) within the time limit set by Rule 4(m), PrimeCare received at least constructive notice of her claims that was sufficient to prevent it from being prejudiced by having to defend on the merits; and (3) within the Rule 4(m) time frame, i.e., 120 days from the filing of Graham's original complaint, PrimeCare knew or should have known that Graham would have brought an action against it, if she had not made a mistake concerning its identity.  See Coons, 620 F.3d at 42.

---

[3] Allowing Graham's proposed amendment would also affect PrimeCare's right to repose.

Graham has made the first showing. Her proposed claims against PrimeCare arise from the fact that no one at the HOC with knowledge of Dr. Thompson's warning ever gave her anti-seizure medication. That is also the factual basis for her claims against the defendants in her original complaint. For the purpose of the analysis that follows, the court will assume that Graham has made the second requisite showing, regarding PrimeCare's notice of her claims. Graham, however, has not carried her burden of showing that, within the Rule 4(m) time frame, PrimeCare knew or should have known that Graham would have named it as a defendant "but for a mistake concerning the [its] identity," Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added).

The problem is that Graham has not identified a mistake concerning PrimeCare's identity of the kind that is cognizable under Rule 15(c)(1)(C)(ii). Graham's Rule 15(c)(1)(C)(ii) argument is based on an assertion that the first time defendants disclosed the contractual relationship between Rockingham County and PrimeCare was in their DeBenedetto disclosure, which was proffered well after the limitation period had run. In other words, Graham argues that her "mistake" was not knowing that PrimeCare was a potential defendant. Lack of knowledge,

14

however, is not a mistake for purposes of relation back. As Judge Stahl has explained:

> Rule 15(c)(3) [the virtually identical predecessor to Rule 15(c)(1)(C)(ii), see Krupski, 560 U.S. at 552 n.4] permits an amendment to relate back only where there has been an error made concerning the identity of the proper party . . . but it does not permit relation back where, as here, <u>there is a lack of knowledge of the proper party</u>.

Wilson v. U.S. Gov't, 23 F.3d 559, 563 (1st Cir. 1994) (quoting Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993)) (internal quotation marks omitted, emphasis supplied by Wilson). Judge Stahl continued:

> In this case, there was no "mistake concerning the identity of the proper party," as required by Rule 15(c)(3). Rather, Wilson merely lacked knowledge of the proper party. In other words, Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes.

<u>Id.</u> The decision in Wilson is in accord with more recent decisions from other circuits. See, e.g., Moore v. Tenn., 267 F. App'x 450, 455 (6th Cir. 2008) ("[A] plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c).") (citation omitted); Joseph v. Elan Motorsports Techs. Racing Corp., 638 F.3d 555, 558 (7th Cir. 2011) ("A failure to identify the proper party is a mistake

15

not about the defendant's name but about who is liable for the plaintiff's injury.").

Regarding the rationale for the rule stated in Wilson, Moore, and Joseph, the court turns to Hall v. Norfolk Southern Railway Co., which includes the following passage:

> It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires. A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a "mistake" as to the defendant's "identity."

469 F.3d 590, 596 (7th Cir. 2006).

Because Graham's motion for leave to amend is based upon nothing more than her professed ignorance of PrimeCare's contractual relationship with Rockingham County, she has not carried her burden of demonstrating that she made a mistake concerning PrimeCare's identity. She may have made a mistake by not naming PrimeCare in her original complaint, but any such mistake was not a mistake concerning PrimeCare's identity. Absent a mistake concerning PrimeCare's identity, defendants are entitled to denial of Graham's motion for leave to amend.[4]

---

[4] As the court has noted, Rule 15(c) litigation often arises in the context of summary judgment, after a motion to amend has been granted. But, it is also common, if "slightly irregular, for a district court simply to 'deny leave to amend based wholly or partially on [the court's] belief that any amendment would not relate back.'" Joseph, 638 F.3d at 559 (quoting Slayton v. Am. Express Co., 460 F.3d 215, 226 n.11 (2d Cir. 2006)).

16

While the lack of a legally cognizable mistake is sufficient to justify a ruling that Graham has not carried her burden under Rule 15(c)(1)(C)(ii), the court also harbors concerns that Graham has not established that PrimeCare "received such notice of the [original] action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(1)(C)(i). For one thing, she does not assert that she ever did anything, such as sending PrimeCare a copy of the complaint, to inform PrimeCare of her action against the defendants she named in her original complaint. Nor does she offer any direct evidence that PrimeCare knew about her claims. See Morel v. DaimlerChrysler AG, 565 F.3d 20, 26 (1st Cir. 2009) (holding new defendant's notice of original complaint was sufficient when that entity did not receive formal service of process, but did receive copy of original complaint). Instead, Graham attempts to impute notice to PrimeCare based upon the undisputed fact of the agreement between PrimeCare and Rockingham County and unsupported assertions that: (1) PrimeCare and the originally named defendants shared counsel; and (2) that shared counsel's firm is PrimeCare's registered agent in New Hampshire. While it would appear that Graham has fallen short of demonstrating that PrimeCare had notice of her claims within the Rule 4(m) period, the court need not resolve that issue

17

because, in the first instance, this case involves no mistake concerning PrimeCare's identity.

## IV. Conclusion

For the reasons described above, defendants' motion for judgment on the pleadings, document no. 7, is granted, and plaintiff's motion for leave to amend her complaint, document no. 12, is denied. Consequently, this case is limited to Graham's four claims against the unknown DOE employees and her two claims against the DOC.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 20, 2015

cc: Richard J. Lehmann, Esq.
Kenneth C. Bartholomew, Esq.
Corey M. Belobrow, Esq.